STATE v. MARECEK

[130 N.C. App. 303 (1998)]

———————

STATE OF NORTH CAROLINA v. GEORGE MARECEK

No. COA97-951

(Filed 21 July 1998)

**1. Evidence— victim's statements—state of mind**

The trial court erred in a prosecution for defendant's first-degree murder of his wife by admitting statements allegedly made by the victim concerning her relationship with the defend-ant and their financial affairs. While the victim's state of mind may be relevant, these statements were inadmissible because they were mere recitations of facts, not statements of emotion, and were offered to prove the facts asserted.

**2. Evidence— witness's statement—witness's understanding of statement—admissible**

In a first-degree murder prosecution reversed on other grounds, there was no error where defendant's son testified that defendant had told him that he had made a big mistake, the son

said, "I know," and the son testified that he was referring to the victim's killing when he said "I know." The question clearly asked the witness to testify about the meaning of his own statement and the answer, in context, was not inadmissible opinion evidence.

Appeal by defendant from judgment entered 24 February 1997 by Judge Ernest B. Fullwood in New Hanover County Superior Court. Heard in the Court of Appeals 21 April 1998.

Defendant George Marecek met the victim, Ms. Viparet Marecek in 1975 in Thailand. In 1979, George Marecek brought Viparet to the United States and married her in 1982 after his divorce. On 3 June 1991, Viparet Marecek drowned after suffering head injuries resulting from being beaten with an unidentified object while on vacation at Fort Fisher, North Carolina. On 10 January 1994, George Marecek was indicted for first degree murder. Defendant was first tried the week of 13 November 1995; but because the jury deadlocked, a mistrial was declared.

A second jury trial was held beginning 27 January 1997. At that trial, the State presented evidence that the victim suspected that defendant was having an affair with a woman in Czechoslovakia. The evidence also showed that defendant spent long periods of time away from his wife with another woman in Czechoslovakia and that defendant spent large sums of money in Czechoslovakia. The State also presented evidence that the victim was afraid of the defendant and had expressed her fear that defendant was going to kill her. Other evidence showed that defendant had made inquiry about finding a secluded fishing spot a couple of days before Viparet's death, and that Viparet's body was found in the secluded area that had been pointed out as a fishing spot to defendant.

Defendant offered alibi testimony that he had not left the beach all day on the day of Viparet's death. The State presented evidence contradicting defendant's alibi through two witnesses who saw him walking with an Asian woman near the entrance to Fort Fisher and the testimony of another witness who saw defendant and his wife walking towards the river, both during the afternoon Viparet was killed.

Defendant was found guilty of second degree murder on 24 February 1997. The trial court found as an aggravating factor that defendant took advantage of a position of trust or confidence to commit the offense. The trial court also found mitigating factors but

determined that the factor in aggravation outweighed the mitigating factors and sentenced defendant to thirty (30) years imprisonment. Defendant appeals.

*Attorney General Michael F. Easley, by Associate Attorney General H. Dean Bowman, for the State.*

*Beaver, Holt, Richardson, Sternlicht, Burge & Glazier, P.A., by H. Gerald Beaver and Richard B. Glazier, for defendant-appellant.*

EAGLES, Chief Judge.

[1] We first consider whether the trial court committed reversible error in allowing testimony concerning conversations, facts, and statements made by the deceased victim to others concerning her relationship with her husband, the family's financial affairs, and the defendant's daily life on the basis that the testimony was inadmissible hearsay. At trial, evidence was presented regarding statements allegedly made by the victim concerning her relationship with the defendant and their financial affairs. Defendant argues these statements should not have been admitted because they were inadmissible hearsay. First, defendant argues that while the victim's state of mind may be relevant to show the status of the relationship as it relates directly to circumstances giving rise to a potential confrontation with the defendant, Rule 803(3) "explicitly does not permit 'a statement of memory or belief to prove the fact remembered.' " In other words, defendant contends that statements as to what the victim's state of mind was are admissible, but statements relating to why the victim had a particular state of mind are not. *See United States v. Cohen,* 631 F.2d 1223, 1225 (5th Cir. 1980), *r'hrg. denied,* 636 F.2d 315 (5th Cir. 1981). Accordingly, defendant argues that the court erred in allowing exhaustive evidence recounting statements made by the victim which were not expressions of fear, but were statements of fact. *See also State v. Hardy,* 339 N.C. 207, 228, 451 S.E.2d 600, 612 (1994) (statements in diary not admissible under Rule 803(3) because they were "merely a recitation of facts which describe various events;" they did not reflect the victim's state of mind). Defendant finally argues that the limiting instruction was not sufficient, and "the taint from the admission of this evidence permeated the trial and mandates reversal of Defendant's conviction."

The State argues that defendant's argument has been rejected by the Supreme Court in *State v. Gray,* 347 N.C. 143, 491 S.E.2d 538

(1997), *cert. denied, Gray v. North Carolina,* 118 S.Ct. 1323, 140 L.Ed.2d 486 (1998). In *Gray,* the Supreme Court distinguished *Hardy,* relied upon by defendants, on the ground that the statements admitted in *Hardy* were "mere recitation of facts and were totally without emotion." *Id.* at 173, 491 S.E.2d at 550 (citing *Hardy,* 339 N.C. at 229, 451 S.E.2d at 612). The Court stated that:

> Each of the witnesses testified as to the victim's 'state of mind,' that she was in fear for her life. The factual circumstances surrounding her statements of emotion serve only to demonstrate the basis for the emotions. Each of the witnesses testified that the victim had stated with specific reason and generally that she was scared of the defendant.

*Id.* at 173, 491 S.E.2d at 550.

The State argues that as in *Gray,* this case is distinguishable from *Hardy* in that the victim's statements were not mere recitations of fact, but ones by which the witness communicated her emotions. Moreover, defendant argues that the statements disprove any contention that the relationship was a close and loving one, and also show motive for murder. Accordingly, the State maintains that defendant can show no error.

After careful consideration of the record, briefs and contentions of both parties, we reverse and remand for a new trial. Pursuant to *Gray,* witness testimony that recounts "mere recitation of fact" should be excluded, while testimony that includes both statements of fact and emotion may be admitted. Inge Shaw testified that Viparet told her that defendant was having an affair with his cousin, that defendant was spending too much money in Czechoslovakia, including $200.00 on English tapes for his cousin, that defendant didn't kiss her when she made him a birthday cake, and that defendant didn't touch her anymore. Susan McCall also testified that Viparet told her that defendant was having an affair with his cousin, that he didn't touch her anymore and they no longer had sexual relations, and that defendant had bought a life insurance policy. Susan Kirk testified that Viparet told her that defendant was having an affair with his cousin, that a box of condoms was missing, that defendant had bought life insurance that they didn't need, that defendant had to go on a budget because he had spent $30,000.00 in Czechoslovakia, and that when defendant drinks "he wants to make whoopee." These statements were inadmissible because they were not statements of emotion, but were "mere recitation of facts and were totally without emotion," *id.*

at 173, 491 S.E.2d at 550 (citing *Hardy*, 339 N.C. at 229, 451 S.E.2d at 612), and were offered to prove the facts asserted, i.e. that the defendant was having an affair with his cousin, that the defendant was spending too much money, that the defendant had purchased a life insurance policy that they did not need, etc. Accordingly, the judgment of the trial court is reversed and remanded for new trial.

[2] To prevent error upon retrial, we next address whether the trial court committed error in allowing testimony from witness George Michael Marecek, the defendant's son, concerning statements made by the defendant. At trial, the trial court allowed George Michael Marecek to testify:

A He told me that he had made a lot of mistakes in his life and that he was sorry, and he had made a big f——ing mistake, and I said, I know. And he said he was sorry for it.

Q Now—and what happened then?

A We hugged.

Q Now, when he mentioned his big mistake and you said you knew, what were you referring to?

    Mr. Beaver:   Objection.

    The Court:   Overruled.

    The Witness: We were talking about him killing Viparat [sic].

Defendant argues that this opinion evidence was inadmissible and prejudicial because it was highly speculative and conjectural and without basis in fact. Defendant argues that "[i]t was strictly Michael's opinion his father's comment was referring to Viparet, but even he testified that he did not know that to be true." Defendant contends that opinion evidence is inadmissible whenever the witness can relate the facts so the jury will have an adequate understanding of them and the jury is as well qualified as the witness to draw inferences and conclusions therefrom.

The State argues that the witness was testifying about the meaning of his own statement "I know" in response to defendant's statement. The State contends that "his response clearly referred to [the witness's] understanding of the conversation in which he was participating with the defendant." Accordingly, the State asserts that the

witness was thereby testifying to matters within his own personal knowledge pursuant to G.S. 8C-1, Rule 602 and was not giving his opinion. Alternatively, the State argues that even if the testimony is construed to be the witness's opinion as to what the defendant meant by the conversation, the opinion would have been properly admitted pursuant to Rule 701 as an opinion "rationally based on the perception of the witness" and "helpful to a clear understanding of his testimony or the determination of a fact in issue." The State argues that "[t]he witness was engaged in a conversation with defendant, and may be presumed to have known what it was about." Furthermore, the State argues that the statement was not unfairly prejudicial, because it was thereafter made clear that the witness did not in fact know to what the defendant was referring, there was testimony concerning the rocky relationship between father and son, and defendant testified that he was not referring to Viparet. Accordingly, the State argues that the assignment of error should be overruled.

The State's arguments are persuasive and the assignment of error is overruled. The question to which defendant counsel objected was "[n]ow, when he mentioned his big mistake and you said you knew, what were you referring to?" The question clearly asks the witness to testify about the meaning of his own statement, "I know," in response to defendant's statement. In this context, the witness's answer was not inadmissible opinion evidence. The witness was testifying to what he meant when he answered "I Know," and was thereby testifying to matters within his own personal knowledge pursuant to Rule 602. Accordingly, the assignment of error is overruled.

In sum, the judgment of the trial court is reversed and remanded for new trial because of the erroneous admission of hearsay testimony concerning statements made by the victim about her relationship with the defendant.

Reversed and remanded.

Judges JOHN and TIMMONS-GOODSON concur.